**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| WILLIAM SWOYER, <br><br>                   Plaintiff, <br><br><br> v. <br><br> 3M COMPANY, AGC CHEMICALS AMERICAS INC., BUCKEYE FIRE EQUIPMENT CO., CHEMGUARD, INC., DUPONT DE NEMOURS INC., HONEYWELL INTERNATIONAL INC., MATLICK ENTERPRISES, INC. D/B/A "UNITED FIRE EQUIPMENT CO.", NATIONAL FOAM, INC., TYCO FIRE PRODUCTS LP, <br><br>                   Defendants. | MDL No. 2873 <br><br> Master Docket No. 2:18-mn-2873 <br><br><br> Hon. RICHARD GERGEL, U.S.D.J. <br><br> *Civil Action* <br><br><br><br> <u>**COMPLAINT**</u> |

Plaintiff William Swoyer, of Bellaire, Ohio, through undersigned counsel, hereby alleges as follows:

<u>**INTRODUCTION**</u>

1.     Plaintiff William Swoyer ("William") was a volunteer firefighter for approximately nearly forty years. From 1984 to about 2020, he worked with aqueous film-forming foams ("AFFFs") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS include, but are not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related, chemicals including those that degrade to PFOA and/or PFOS.

2.     AFFFs are used by volunteer fire departments throughout the country to extinguish

fires. William was exposed to AFFFs in training sessions, while fighting fires, and, after a fire was extinguished, by "painting" rooms, which entails coating every surface with a thick concentration of foam to prevent fires from rekindling. Throughout his career as a volunteer firefighter, William was routinely exposed to AFFFs by way of direct dermal contact.

3.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFFs with knowledge that they contained highly toxic PFAS, which would expose end users of the product to the risks associated with PFAS. Each of the Defendants supplied AFFFs, either on a manufacturer or distributor basis, to the Spirit of '76 Volunteer Fire Department in Bellaire, Ohio, the volunteer fire department with which William served.

4.     PFAS accumulates in the blood and bodily tissues of humans exposed to the material and persists for long periods of time. These are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS present significant health risks to humans who are exposed to them.

5.     In his role as a firefighter, William used Defendants' AFFFs in their intended manner, without material change in the products' condition, and in a manner that Defendants were aware that firefighters like William would use the product. William was unaware of the toxic nature of the PFAS in AFFFs – indeed, Defendants represented that their AFFFs were inert and posed no health hazard.

6.     After nearly four decades of exposure to AFFFs, in 2024 William was diagnosed with ulcerative colitis. William's exposure to and dermal absorption of Defendants' AFFF products caused him to develop the serious medical conditions and complications alleged herein. He never had any gastrointestinal issues before that time, and he has no family history of ulcerative

colitis.

## **PARTIES**

7.    Plaintiff William Swoyer resides in Bellaire, Ohio.

8.    Defendant 3M Company ("3M"), is a Delaware corporation and conducts business internationally, including in the jurisdiction where Plaintiff was exposed to AFFF. 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used by volunteer fire departments for training and responding to fires, as described in this Complaint.

9.    Defendant AGC Chemicals Americas Inc. ("AGC, Inc.") is a Delaware corporation and conducts business internationally, including in the jurisdiction where Plaintiff was exposed to AFFF.  AGC, Inc. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used by volunteer fire departments for training and responding to fires, as described in this Complaint.

10.    Defendant Buckeye Fire Equipment Co. ("Buckeye Fire") is an Ohio corporation and conducts business internationally, including in the jurisdiction where Plaintiff was exposed to AFFF. Buckeye Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used by volunteer fire departments for training and responding to fires, as described in this Complaint.

11.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States, including in the jurisdiction where Plaintiff was exposed to AFFF. Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used by volunteer fire departments for training and responding to fires, as described in this Complaint.

3

12.     Defendant DuPont de Nemours Inc. ("DuPont") is a Delaware corporation and does business throughout the United States, including in the jurisdiction where Plaintiff was exposed to AFFF.  DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used by volunteer fire departments for training and responding to fires, as described in this Complaint.

13.     Defendant Honeywell International Inc. ("Honeywell") is a Delaware corporation and does business throughout the United States, including in the jurisdiction where Plaintiff was exposed to AFFF. Honeywell designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

14.     Defendant Matlick Enterprises, Inc., d/b/a United Fire Equipment Company ("United Fire"), is an Arizona corporation and does business throughout the United States, including in the jurisdiction where Plaintiff was exposed to AFFF. United Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

15.     Defendant National Foam, Inc. ("National Foam"),  is a Delaware corporation and does business throughout the United States, including in the jurisdiction where Plaintiff was exposed to AFFF.  National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

16.     Defendant Tyco Fire Products, LP ("Tyco"), as successor-in-interest to The Ansul Company, is a Delaware limited partnership and does business throughout the United States,

4

including in the jurisdiction where Plaintiff was exposed to AFFF. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand of AFFF containing PFAS. Tyco, and its predecessor in interest Ansul, designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Complaint.

17.     Plaintiff alleges that each named Defendant is in some manner responsible for the acts alleged herein and that they directly and proximately caused Plaintiff's injuries, as alleged herein.

18.     Plaintiff alleges that each named Defendant derived substantial revenue from the design, manufacture, testing, packaging, promoting, marketing, advertising, distributing, labeling, and/or sale of PFAS-containing AFFF within those states and locations where Plaintiff was exposed.

19.     Defendants expected or should have expected their acts to have consequences including within those states and locations where Plaintiff was exposed and derived substantial revenue from interstate commerce.

20.     Defendants purposefully availed themselves of the privilege of conducting activities including within those states and locations where Plaintiff was exposed, thus invoking the benefits and protections of its laws.

21.     All references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

## JURISDICTION AND VENUE

22.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1),

because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interests and cost.

23.    Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Amended Complaint in the United States District Court for the Eastern District of Ohio as the home venue. Venue is originally proper in the District Court pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, and Defendants conduct business within the district.

## GENERAL ALLEGATIONS

24.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish fires.

25.    AFFF has better firefighting capabilities than water because of its unique properties, which extinguish fires by smothering them, ultimately starving them of oxygen.

26.    AFFF can be used to fight fires directly in conjunction with or in place of water, or they can be used to insulate a premises that was previously on fire, to prevent fire from reigniting.

27.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and other parts of the world. AFFF contains PFAS, which are highly fluorinated synthetical chemical compounds whose family includes PFOS and PFOA.

28.    PFAS have been used for decades in the manufacture of AFFF. PFAS chemicals are entirely manmade, and do not naturally occur.

29.    Prior to commercial development and large-scale manufacture and use of AFFF

containing PFAS, no such PFAS had been found or detected in humans.

30.     AFFF and PFAS are associated with various adverse health effects in humans.

31.     Exposure to AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

32.     In the 1960s, studies by PFAS manufacturers raised concerns about the health risks caused by these substances.

33.     By the 1970s, animal studies of PFAS revealed immunotoxicity and other adverse effects.

34.     By the 1980s, studies by PFAS manufacturers reported immunotoxicity and carcinogenicity effects caused by PFAS.

35.     By the 1990s, certain PFAS manufacturers began monitoring the levels of PFAS in the blood serum of their workers. Studies began showing an excess occurrence of prostate cancer in individuals exposed to PFAS.

36.     By at least 2010, additional research and testing performed by certain PFAS manufacturers revealed multiple potential adverse health impacts among workers exposed to PFAS, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

37.     After the U.S. Environmental Protection Agency and other entities began asking manufacturers to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or distributing more of certain other and/or "new" PFAS, including so-called "Short-Chain PFAS."

38.     Defendants manufacturing and/or distributing Short-Chain PFAS are aware that

Short-Chain PFAS have also been found in human blood. By the mid-2010s, manufacturers were aware that certain Short-Chain PFAS have been found to cause the same triad of tumors, (testicular, liver, and pancreatic), in animals as non-Short-Chain PFAS.

39.     Moreover, by the early 2010s, research on Short-Chain PFAS suggested that the technical performance of these Short-Chain PFAS is lower, requiring larger quantities and/or more substances to be used to provide the same performance, leading to the same aggregate exposure for affected humans.

40.     Nonetheless, Defendants each downplayed the risks of AFFFs containing PFAS to firefighters like William Swoyer, with one manufacturer describing it as "no more than slightly toxic."

41.     Even after an independent science panel, known as the "C8 Science Panel," announced in the 2010s that human exposure to PFAS were associated with certain human diseases, including ulcerative colitis and certain forms of cancer, Defendants continued to downplay the risk of AFFFs.

42.     At all relevant times, Defendants, through their acts and omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the risks of exposure to AFFFs containing PFAS.

43.     At all relevant times, Defendants encouraged continued and increased use of PFAS by their customers and others and tried to encourage and foster the increased and further use of PFAS through the promotion of AFFFs to fire departments, including the volunteer fire department where William Swoyer served, while downplaying the risks.

44.     At all relevant times, Defendants were and/or should have been aware, or knew and/or should have known, that their design, marketing, development, manufacture, distribution,

release, training and response of users, production of instructional materials and/or sale of AFFFs containing PFAS would result in the contamination of the blood and/or body of William Swoyer with PFAS, causing injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to William Swoyer.

***Defendants' AFFF Products were used by the Spirit of '76 Volunteer Fire Department***

45.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFF products containing toxic PFAS that were used by the United States military nationwide.

46.     Defendants each designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFF products containing PFAS in such a way as to cause the exposure to and ultimate contamination of William Swoyer's blood and body with PFAS, resulting in persistence and accumulation of PFAS in his blood and body.

47.     Each of the Defendants manufactured, sold, and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department, thereby causing the contamination of the blood and/or body of William Swoyer with PFAS.

48.     Upon information and belief, Defendant 3M manufactured and/or sold AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. 3M's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by 3M, thereby exposing William Swoyer to PFAS.

49.     Upon information and belief, Defendant AGC, Inc. manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time

periods. AGC Chemicals' AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by AGC Chemicals, thereby exposing William Swoyer to PFAS.

50.     Upon information and belief, Defendant Buckeye Fire manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. Buckeye Fire's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by Buckeye Fire, thereby exposing William Swoyer to PFAS.

51.     Upon information and belief, Defendant Chemguard manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. Chemguard's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by Chemguard, thereby exposing William Swoyer to PFAS.

52.     Upon information and belief, Defendant DuPont manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. DuPont's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by DuPont, thereby exposing William Swoyer to PFAS.

53.     Upon information and belief, Defendant Honeywell manufactured, sold and/or

distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. Honeywell's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by Honeywell, thereby exposing William Swoyer to PFAS.

54.     Upon information and belief, Defendant United Fire manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. United Fire's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by United Fire, thereby exposing William Swoyer to PFAS.

55.     Upon information and belief, Defendant National Foam manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. National Foam's AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by National Foam, thereby exposing William Swoyer to PFAS.

56.     Upon information and belief, Defendant Tyco, as successor-in-interest to Ansul, manufactured, sold and/or distributed AFFF products to the Spirit of '76 Volunteer Fire Department during all relevant time periods. Tyco's (Ansul's) AFFF products were used by firefighters in the Spirit of '76 Volunteer Fire Department, including William Swoyer, in their ordinary course of firefighting activities and in the manner in which these AFFF products were expected to be used by Tyco (Ansul), thereby exposing William Swoyer to PFAS.

11

*Plaintiff's Exposure to Defendants' AFFFs*

57.     William Swoyer began volunteering with the Spirit of '76 Volunteer Fire Department in 1984. William served in that capacity for nearly forty years.

58.     William was first exposed to AFFFs in 1985.  During training, it was common to have AFFFs on his body from head to toe, and it was common to have direct skin contact with AFFFs while cleaning up after training sessions. At the time, he was led to believe that the foam was generally inert and provided no hazard to his health. After his training, while serving as a volunteer firefighter with the Spirit of '76 Volunteer Fire Department, William was exposed to AFFFs while spraying foam during firefighting operations.

59.     William's responsibilities as a firefighter included driving, pumping, and maintaining the fire truck, which included pumping AFFFs, cleaning AFFFs out of the firefighting equipment, and adding new foam as needed. While operating and cleaning equipment using foam, he was never given any instruction from the manufacturers or distributors to avoid contact with AFFFs, or that the materials were otherwise harmful.

60.     William was also in charge of foam testing for crash trucks and structural pumpers. Foam testing consisted of discharging water and foam from the trucks, collecting the foam by hand, and checking the foam's percentage with a refractometer.

61.     When William received training on Class A and Class B AFFFs, he was instructed that AFFFs were just as safe as dish soap. In fact, after fighting fires, William and his colleagues often cooled themselves down with water from tanker trucks that had previously contained AFFF.

62.     William was also instructed that AFFF should be used as a primary agent for fighting fires. Manufacturers and Distributors, such as the Defendants, provided videos demonstrating that AFFFs suppressed fire more effectively than water. Additionally, he and his

fellow volunteer firefighters were encouraged to "paint" a smoldering room, which is the practice of coating every surface in a room with a thick concentration of AFFFs to prevent reignition of a fire.

63.     These procedures, actively promoted by Defendants, led William to have extensive direct contact with AFFFs in the course of his ordinary duties as a firefighter.

64.     The Spirit of '76 Volunteer Fire Department was convinced, at the encouragement of the Defendants, to add AFFF delivery systems to every new Fire Engine. This was an expensive add-on, and it led to an expectation, actively encouraged by Defendants, that William would use AFFFs routinely on common fires.

65.     Over the course of four decades as a volunteer firefighter with the Spirit of '76 Volunteer Fire Department, from 1984 to about 2020, William Swoyer routinely used, handled, and came in direct contact with AFFFs containing PFOA produced, manufactured, sold, and/or distributed by the Defendants. His exposure to these products was in the ordinary course of his firefighting activities, and was in the standard way that Defendants anticipated that these products would be used and handled.

66.     At no time in his career was William warned by the Defendants that their products carried a substantial risk of adverse medical outcomes, including ulcerative colitis and various forms of cancer.

67.     In 2024, William Swoyer was diagnosed with severe ulcerative colitis, for which he has been hospitalized on several occasions.

### COUNT I
**(Negligence)**

68.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 67 of this Complaint as if restated in full herein.

13

69.     The Defendants had a duty to individuals, including Plaintiff, to exercise reasonable, ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the PFAS-containing AFFF products.

70.     Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF products and/or underlying PFAS-containing chemicals used in AFFF production in one or more of the following respects:

a) Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

b) Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

c) Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

d) Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

e) Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

f) Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, and warning; and

g) Selling and/or distributing a product which was inherently dangerous to the public.

71.     As a direct and proximate result of Defendants' negligence, Plaintiff has been

injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II
### (Battery)

72.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 71 of this Complaint as if restated in full herein.

73.     At all relevant times, Defendants possessed knowledge that the PFAS- and/or underlying chemicals and/or products contained in AFFF, which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff having PFAS in his blood, and the bio-persistence and bio-accumulation of such PFAS in his blood.

74.     However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff accumulating PFAS in his blood and/or body, and such PFAS persisting and accumulating in his blood and/or body.

75.     Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's blood and/or body, or to persist in and/or accumulate in

Plaintiff's blood and/or body.

76.     Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's persons and unreasonably interferes with Plaintiff's rightful use and possession of Plaintiff's blood and/or body.

77.     At all relevant times, the PFAS present in the blood of Plaintiff originated from Defendants' acts and/or omissions.

78.     Defendants continue to knowingly, purposefully, and/or intentionally engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff that results in persisting and accumulating levels of PFAS in his blood.

79.     Plaintiff, and any reasonable person, finds the contact at issue harmful and/or offensive.

80.     Defendants acted intentionally with the knowledge and/or belief that the contact, presence, and/or invasion of PFAS with, onto, and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

81.     Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's blood and/or body.

82.     The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

83.     The presence of PFAS in the blood and/or body of Plaintiff has altered the structure and/or function of such blood and/or body parts and resulted in Plaintiff's ulcerative colitis.

84.     As a direct and proximate result of Defendants' negligence, Plaintiff has been

16

injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III
### (Products Liability – Failure to Warn)

85.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 84 of this Complaint as if restated in full herein.

86.     Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

87.     Defendants are the manufacturers and/or distributors of the AFFF containing PFAS to which Plaintiff was exposed.

88.     Defendants are each sellers of the PFAS-containing AFFF products to which Plaintiff was exposed. Defendants sell AFFF products in the ordinary course of their business.

89.     Defendants, as manufacturers and sellers of AFFF products, had a duty to provide adequate warnings or instructions about the dangers of their products. Defendants had this duty even if the product was perfectly designed and manufactured.

90.     Defendants' warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

91.     Defendants' failure to adequately warn and/or instruct existed before the fluorochemical products left the Defendants' control.

17

92.     Defendants' AFFF products were not substantially altered after they left Defendants' control.

93.     Defendants knew, or in the exercise of ordinary care, should have known the exposure to PFAS-containing AFFF products presented a substantial danger when individuals such as Plaintiff were exposed to said products because they are hazardous to human health and the environment.

94.     The use of the AFFF in training activities and routine firefighting activities was the purpose for which the AFFF was intended and was reasonably foreseeable by Defendants. AFFF products were used in substantially the same condition in which they were sold.

95.     Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF products, to which he was thereby exposed to Defendants' PFAS-containing AFFF products.

96.     A reasonable firefighter would not expect AFFF products used in training activities and routine firefighting activities to expose him to a known carcinogen or biohazard.

97.     Adequate instructions and warnings on the AFFF containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiff. If Defendants had provided adequate warnings: a) Plaintiff could have and would have taken measures to avoid or lessen exposure, and; b) end users and governments could have taken steps to reduce or prevent the release of PFAS into the blood and/or body of Plaintiff.

98.     Defendants' failure to warn was a direct and proximate cause of Plaintiff's injuries from PFAS that came from the use, storage, and disposal of AFFF containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the

AFFF products sold by Defendants defective.

99.     Defendants were negligent in their failure to provide Plaintiff with adequate warnings or instruction that the use of their AFFF products would cause PFAS to be released into the blood and/or body of Plaintiff.

100.     Defendants' failure to provide adequate and sufficient warnings for the AFFF products that they manufactured, marketed, and sold renders the products defective.

101.     As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

102.     As a result of the Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are strictly liable in damages to Plaintiff.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## <u>COUNT IV</u>
**(Products Liability – Design Defect)**

103.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 102 of this Complaint as if restated in full herein.

104.     Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

105.     At all times relevant, Defendants were regularly engaged in the design, formulation, production, creation, manufacture, construction, assembly, rebuilding, sale, distribution, preparation, and/or labeling of PFAS-containing AFFF products.

106.    At all times relevant, Defendants regularly participated in placing the PFAS-containing AFFF products into the stream of commerce throughout the United States, including those states and locations where Plaintiff lived and/or served.

107.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of AFFF products, Defendants owed a duty to not manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

108.    Plaintiff used Defendants' AFFF products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

109.    Defendants' AFFF products failed to meet the Plaintiff's reasonable expectation that said products are reasonably suitable and safe for human use or exposure.

110.    Defendants' AFFF products, when used as intended or in a reasonably foreseeable manner by Plaintiff, did not perform as safely as an ordinary consumer would have expected because fluorochemical products are carcinogens and are otherwise harmful to human health and the environment.

111.    Defendants' defective design of the AFFF products was far more dangerous than an ordinary consumer, such as the Plaintiff would expect when used, as Plaintiff did, in an intended and reasonably foreseeable manner.

112.    Defendants knew or should have known: a. exposure to AFFF containing PFAS is hazardous to human health; b. the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and c. the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiff and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiff.

113.    Knowing of the dangerous and hazardous properties of the PFAS-containing AFFF, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous, toxic, and poisonous PFAS. These alternative designs and formulations were already available, practical, and technologically feasible.

114.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to Plaintiff caused by the Defendants and their manufacture, marketing, distribution, and sale of AFFF containing hazardous, toxic, and poisonous PFAS.

115.    The risk of AFFF products were not obvious to users of the AFFF, nor were they obvious to consumers or users in the vicinity of the use of AFFF, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiff could not have reasonably discovered the defects and risks associated with the use of PFAS-containing AFFF and could not protect themselves from exposure to Defendants' PFAS-containing products.

116.    The failure of Defendants' AFFF products to perform safely was a substantial factor in causing Plaintiff's harm.

117.    As a direct result of AFFF products being utilized as the Defendants intended, PFAS and other chemicals were absorbed into Plaintiff's tissue.

118.    But for Defendants' AFFF products' failure to perform safely, Plaintiff would not have suffered the damages alleged herein.

119.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT V
### (Strict Liability - Statutory)

120.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 119 of this Complaint as if restated in full herein.

121.     Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's home state (Ohio) for strict liability against each Defendant.

122.     At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, manufacture, construction, assembly, rebuilding, sale, marketing, distribution, preparation, and/or labeling of PFAS-containing AFFF products.

123.     The AFFF products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by Defendants.

124.     Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF products to which he was thereby exposed to Defendants' PFAS-containing AFFF.

125.     Plaintiff used Defendants' AFFF products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

126.     As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT VI
### (Strict Liability – § 402A, Restatement of Torts)

127.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 126 of this Complaint as if restated in full herein.

128.     Plaintiff brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third), against Defendants.

129.     The AFFF products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by Defendants.

130.     Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF products to which he was thereby exposed to Defendants' PFAS-containing AFFF.

131.     Plaintiff used Defendants' AFFF in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

132.     Defendants had available reasonable alternative designs which would have made the AFFF safer and would have most likely prevented the injuries and damages to the Plaintiff, thus violating state law and the Restatement of Torts.

133.     Defendants failed to properly and adequately warn and instruct Plaintiff as to the proper safety and use of their AFFF products.

134.     Defendants failed to properly and adequately warn and instruct Plaintiff regarding the inadequate research and testing of the products.

135.     Defendants' AFFF products are inherently dangerous and defective, unfit and

unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

136.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII
### (Fraudulent Concealment)

137.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 136 of this Complaint as if restated in full herein.

138.    At all times relevant, Defendants and knew that their products were defective and unreasonably unsafe for their intended purpose.

139.    For at least several decades, Defendants had knowledge or the means of knowledge that their PFAS-containing AFFF products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to PFAS-containing AFFF and physical injuries in humans and animals.

140.    Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiff and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

141.    Defendants were under a duty to Plaintiff and the public to disclose and warn of the

defective and harmful nature of the products because: a) Defendants had a duty to Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because: Defendants were in a superior position to know the true quality, safety and efficacy of their AFFF products; b) Defendants knowingly made false claims about the safety and quality of the AFFF products in documents and marketing materials; and Defendants fraudulently and affirmatively concealed the defective nature of AFFF Defendants products from Plaintiff.

142.    Defendants knowingly, intentionally, maliciously, and/or willfully failed and/or refused to advise Plaintiff and the public of the dangers and/or health risks posed by Defendants' AFFF products.

143.    The facts concealed and/or not disclosed by AFFF Defendants to Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use AFFF Defendants products.

144.    Defendants withheld, misrepresented, and/or concealed information regarding exposure to PFAS-containing AFFF from Plaintiff with the intention to mislead and/or defraud him into believing that his PFAS-containing AFFF exposure was not harmful, and to mislead and/or defraud him into continuing to be exposed to their PFAS-containing AFFF products.

145.    Defendants withheld, misrepresented, and/or concealed information regarding PFAS-containing AFFF exposure that was a substantial factor in causing Plaintiff's harm.

146.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual,

compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII
### (Breach of Express and Implied Warranties)

147.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 146 of this Complaint as if restated in full herein.

148.    At all times relevant, Defendants manufactured, marketed, labeled, and sold the AFFF products that have been previously alleged and described herein.

149.    At all times relevant, Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, Defendants knew of the use for which they were intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for their intended purpose.

150.    At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, Defendants knew of the use for which they were intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for their intended purpose.

151.    Defendants warranted that the products were merchantable and fit for the particular purpose for which they were intended and would be reasonably safe. These warranties were breached and such breach proximately resulted in the injuries and damages suffered by Plaintiff.

152.    Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF products to which he was thereby exposed to Defendants' PFAS-containing AFFF.

153.    Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment and the implied and/or express warranties in using the products.

154.    Defendants breached their implied and/or express warranties and did not meet the

expectations for the performance of the products when used for their intended purpose and were neither of merchantable quality nor safe for their intended use in that the products have a propensity to cause serious injury and pain, including ulcerative colitis.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX
### (Willful and Wanton Misconduct)

155.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs 1 to 154 of this Complaint as if restated in full herein.

156.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff.

157.    Defendants breached the duty of care owed to the Plaintiff.

158.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Plaintiff.

159.    As a proximate and foreseeable consequence of the actions of Defendants, Plaintiff was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's ulcerative colitis.

**WHEREFORE**, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## CLAIM FOR PUNITIVE DAMAGES

160.    Plaintiff hereby incorporates by reference the allegations contained in the preceding

27

paragraphs 1 to 159 of this Complaint as if restated in full herein.

161.    At all times relevant, Defendants manufactured, marketed, and/or sold the PFAS-containing AFFF products to which Plaintiff was exposed and resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

162.    Defendants either knew or should have known that an increasing volume of industry research demonstrated that PFAS-containing products cause serious medical effects in humans who are exposed to them dermally, including ulcerative colitis.

163.    Defendants have never warned the military, firefighters, or the broader public of the known health risks of their PFAS-containing AFFF products. Defendants concealed the risks of their AFFF products and actively represented that AFFF did not present a risk of harm to the environment or human health.

164.    Defendants continued to manufacture, sell, market, distribute, design, formulate and/or supply AFFF products for years after learning of the significant risks to the environment and human health.

165.    Defendants' failure to disclose the information regarding the risks of AFFF products and their failure to provide adequate warnings and/or instructions as to these risks demonstrate Defendants' reckless disregard for the safety and welfare of the public, including the Plaintiff.

166.    Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to fluorochemical products.

167.    Plaintiff is entitled to punitive damages because Defendants engaged in willful, wanton, malicious, fraudulent and/or reckless conduct, which includes but is not limited to: a) Issuing no warnings and failing to divulge material information concerning the danger to health

that PFAS-containing AFFF products posed; b) Failing to prevent the foreseeable impacts of AFFF products exposure upon the Plaintiff; and c) Willfully withholding, misrepresenting, and/or concealing information regarding the danger of exposure to AFFF products from Plaintiff, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to PFAS-containing AFFF was not harmful, and to mislead and/or defraud them into continuing to purchase and use AFFF products.

168.    As a proximate and foreseeable consequent of Defendants' negligent, reckless willful, fraudulent and/or wanton actions and/or intentional failures, Plaintiff was exposed to unreasonably dangerous toxic PFAS-containing AFFF, which caused Plaintiff's ulcerative colitis.

169.    As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' AFFF products and will continue to suffer serious, debilitating, and severe bodily injuries, mental anguish, and emotional distress relating to Plaintiff's bodily injuries caused by Defendants' AFFF products.

170.    Defendants have demonstrated a conscious disregard for the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

171.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

### *Discovery Rule Tolling*

172.    Plaintiff had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

173.     Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

174.     Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiff have disclosed that PFAS could cause personal injury.

175.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

***Fraudulent Concealment Tolling***

176.     All applicable statutes of limitations also have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

177.     Instead of disclosing to the public critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

178.     This fraudulent concealment continues through the present day.

179.     Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.


## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff William Swoyer demands judgments against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

a)     Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

b) Awarding economic damages in the form of medical expenses, out-of-pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

c) Punitive damages in an amount sufficient to punish Defendants and deter future similar conduct;

d) Reasonable fees for attorneys and expert witnesses;

e) Costs and disbursements of this lawsuit;

f) Interest on the damages according to law; and

g) Any other and further relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims in this action.

Dated: Oct. 27, 2025                    Respectfully Submitted,


LAW OFFICES OF G. MARTIN MEYERS
*Attorneys for Plaintiffs*

By: */s/ Justin Meyers*

Justin A. Meyers (NJ#041522006)
justin@gmeyerslaw.com
35 West Main Street, Suite 106
Denville, NJ 07834
Tel: (973) 625-0838
Fax: (973) 625-5350